# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

OWNER-OPERATOR INDEPENDENT
DRIVERS ASSOCIATION, INC., *et al.*

         Plaintiffs,

         v.

UNITED STATES DEPARTMENT OF
TRANSPORTATION, *et al.*,

         Defendants.

Civil Action No. 12-1158 (BAH)

Consolidated with:
Civil Action No. 14-548 (BAH)

Chief Judge Beryl A. Howell

## <u>MEMORANDUM OPINION</u>

The plaintiffs, Owner-Operator Independent Drivers Association, Inc. ("OOIDA"), which

is an organization that represents professional truck drivers and small business trucking

companies, and five of its individual members, who are commercial truck drivers, brought this

lawsuit against the defendants, the United States Department of Transportation ("DOT"),

Anthony Foxx,[1] in his official capacity as Secretary of the DOT ("Secretary"), the FMCSA, and

Anne S. Ferro, in her official capacity as Administrator of the FMCSA (collectively, "DOT" or

"defendants"), in an effort to protect against the dissemination to potential employers of

information in a federal database about state citations issued against them that were dismissed or

resolved in their favor. Pending before the Court are three motions: the plaintiffs' Motion for

Leave to Conduct Discovery, ECF No. 53, and cross-motions for summary judgment filed by the

parties, Defs.' Mot. Summ. J., ECF No. 60; Pls.' Cross-Mot. Summ. J., ECF No. 64. For the

reasons set forth below, the plaintiffs fail to allege or demonstrate any harm as a result of the

---

[1]      During the pendency of this lawsuit, Anthony Foxx succeeded Raymond H. Lahood as the DOT's
Secretary and, thus, Mr. Foxx is automatically substituted in place of Mr. Lahood as a named party to this action.
*See* FED. R. CIV. P. 25(d).

defendants' actions, and as such, they have not shown an injury in fact sufficient to support

standing.  The Court therefore lacks subject-matter jurisdiction over this case, which it must

dismiss.

## I.   BACKGROUND

The legal framework governing consideration of the pending motions is addressed first

before turning to the factual allegations underlying the plaintiffs' complaint and the procedural

history of this matter.

### A.   Statutory and Regulatory Framework

The Federal Motor Safety Administration ("FMCSA") was created by the Congress as

"an administration of the Department of Transportation" and tasked with giving "the highest

priority" to carrying out congressional intent in "the furtherance of the highest degree of safety in

motor carrier transportation." 49 U.S.C. § 113(a)-(b). As part of this statutory mandate, the

FMCSA maintains the Motor Carrier Management Information System ("MCMIS"), a database

containing information on commercial truck drivers' safety records, which includes "accident

reports and other safety violations."  *See Weaver v. FMCSA*, 744 F.3d 142, 143 (D.C. Cir. 2014)

(discussing creation of MCMIS).  The states serve as the primary collectors and reporters to

FMCSA of the data contained in the MCMIS, and are required to ensure that this data is

"accurate, complete, and timely motor carrier safety data." 49 U.S.C. § 31102(b)(2)(Q)(i).  DOT

is ultimately responsible for "ensur[ing], to the maximum extent practical, all the data is

complete, timely and accurate," *id*. § 31106(a)(3)(F), and "prescrib[ing] technical and

operational standards to ensure uniform, timely, and accurate information collection and

reporting by the States," *id*. § 31106(a)(4)(A).

The FMCSA is statutorily required to make certain information contained in the MCMIS electronically available to potential employers of commercial drivers for preemployment screening, namely: "(1) Commercial motor vehicle accident reports[;] (2) Inspection reports that contain no driver-related safety violations[; and] (3) Serious driver-related safety violation inspection reports." *Id*. § 31150(a).  This access is to be provided to assist "in assessing an individual operator's crash and serious safety violation inspection history as a preemployment condition" and "may only be used during the preemployment assessment of an operator-applicant." *Id.* § 31150(c).  The law requires that the MCMIS be operated in a manner ensuring dissemination "in accordance with the Fair Credit Reporting Act [("FCRA")] (15 U.S.C. 1681 *et seq*.) and all other applicable Federal law." *Id*. § 31150(b)(1). In addition, FMCSA must "provide a procedure for the operator-applicant to correct inaccurate information in the System in a timely manner." *Id.* § 31150(b)(4).  FMCSA has implemented the preemployment screening access through a program known as the Pre-Employment Screening Program ("PSP").  Admin. Record ("AR") 25.

"To meet the statutory mandate of providing a correction mechanism" for violation reports stored in the MCMIS, "FMCSA established 'DataQs,' a web-based dispute resolution procedure that allows an individual to challenge data maintained by FMCSA."  *Weaver*, 744 F.3d at 143 (internal quotation marks omitted); *see also Silverado Stages, Inc. v. FMCSA*, 809 F.3d 1268, 1271 (D.C. Cir. 2016) (describing DataQs).  When a challenge is made to a reported safety violation by a driver, the FMCSA forwards it to the issuing state and "state officials also decide how to respond when a driver challenges a citation's inclusion in the database."  *Weaver*, 744 F.3d at 143.  FMCSA is not authorized to direct a State to change or alter MCMIS data for violations or inspections originating within a particular State.  *Id.* at 143-44.  "Once a State office

makes a determination on the validity of a challenge," the FMCSA is bound by the state

reporting as the "final resolution of the challenge." *Id.* at 144.

In 2014, after this case was initially filed, the FMCSA adopted a significant change to the

DataQs system.  Under the new system, the MCMIS allows inclusion of adjudicated citation

results associated with violations documented during an inspection.  Motor Carrier Management

Information System (MCMIS) Changes to Improve Uniformity in the Treatment of Inspection

Violation Data, 79 Fed. Reg. 32,491 (Jun. 5, 2014) ("2014 Interpretative Rule and Statement of

Policy").  Prior to this rule, MCMIS included only inspection and violation data from the initial

inspection report, and did not have a field in which to enter the result of an adjudicated citation.

*Id.* [2]

### B.     Factual History

Between March 2010 and February 2013, five professional truck drivers, Brian E. Kelley,

Robert Lohmeier, Klint L. Mowrer, J. Mark Moody, and Fred Weaver, Jr. (collectively, the

"individual plaintiffs"), each received one or more citations from state law enforcement

authorities for having allegedly violating safety regulations while driving.  *See* AR at 23-24

(Mowrer), 30 (Lohmeier), 120 (Kelley), 125 (Weaver), 180-181 (Moody).  The individual

plaintiffs successfully challenged these citations in state court: the cases against Kelley,

Lohmeier, Moody and Weaver were ultimately dismissed, Am. Compl.  ¶ 120, ECF No. 35

---

[2]      The plaintiffs claim that the FMCSA has not yet implemented the 2014 Interpretative Rule and Statement of Policy and that, as of February 4, 2016, the MCMIS contains no new fields for the results of adjudicated citations. Pls.' Mem. Supp. Cross-Mot. Summ. J. & Opp'n Def.'s Mot. Summ. J. ("Pls.' Mem.") at 5, ECF No. 64-1; Pls.' Reply Supp. Cross-Mot. Summ. J. ("Pls.' Reply") at 10-11, ECF No. 74.  The defendants respond that a publicly available FMCSA document titled "DataQs Analyst Guide. Best Practices for Federal and State Agency Users" (available at https://dataqs.fmcsa.dot.gov/Data/Guide/DataQs_Users_Guide_and_Best_Practices_Manual.pdf) shows the procedures now in place for processing requests under the 2014 Interpretative Rule and Statement of Policy.  Defs.' Opp'n Pls.' Cross-Mot. Summ. J. & Reply Supp. Defs.' Mot. Summ J. ("Defs.' Reply") at 22, ECF No. 70.  This factual dispute need not be resolved as it has no bearing on the plaintiffs' standing.

(Moody);[3] AR at 119 (Kelley), 144 (Lohmeier), 256 (Weaver), and Mowrer was found not guilty after a trial, AR at 132.  Subsequently, all the plaintiffs but Moody requested through DataQs the removal of the violation reports related to these citations in the MCMIS.  *See* AR at 116-17 (Kelley), 122-23 (Lohmeier), 133 (Mowrer), 249-50 (Weaver).  In each case, the intervening state authority rejected the request because the MCMIS system at the time did not display adjudicatory outcomes, only that an initial citation was made.

In a letter dated July 8, 2011, OOIDA wrote to the FMCSA's Administrator on behalf of Kelley, Lohmeier and Mowrer, asking that the violation reports corresponding to the successfully challenged citations "be removed from all FMCSA databases."  *Id.* at 126-29.  Consistent with the statutory and regulatory requirement making the states the final arbiters of MCMIS information, the FMCSA's Administrator forwarded the requests to the appropriate state authorities.  *Id.* at 174-77.  The challenges were again rejected by the respective states for each plaintiff, and the FMSCA's Administrator reported these rejections to OOIDA, noting that the FMCSA "concur[red] with the State responses to these DataQs."  *Id.* at 178-79.

## C.    Procedural History

In 2011, the plaintiffs, with the exception of Weaver, initiated the instant lawsuit asserting five related claims, four under the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701 *et seq.*, and one under the FCRA, all of which are predicated on the maintenance and dissemination of allegedly incomplete data in the MCMIS database.  Soon after the case was filed, DOT moved to dismiss for lack of jurisdiction, Defs.' Mot. to Dismiss, ECF No. 8, but the case was stayed, over plaintiffs objections[4],  when a nearly identical case was filed by plaintiff

---

[3]        Unlike the other individual plaintiffs, the record does not contain evidence showing that the case against Moody was dismissed.  Nevertheless, because the merits of the claims are not reached, the citation to the complaint is included for completeness of the factual history.

Weaver directly in the Court of Appeals for the D.C. Circuit.  The Circuit ultimately concluded that original jurisdiction in the appellate court was lacking and transferred the case to this Court, pursuant to 28 U.S.C. § 1631.  *Weaver*, 744 F.3d at 148.

After consolidation of plaintiff Weaver's case with the instant case, the plaintiffs filed, by consent, an amended consolidated complaint, First Am. Compl. ("FAC"), ECF No. 35, alleging, under the APA, that the defendants acted arbitrarily and capriciously, and/or in excess of statutory authority, by: (1) maintaining in the MCMIS and releasing through the PSP violation reports related to citations that were adjudicated in the driver's favor without reference to the subsequent adjudications, FAC ¶¶ 144-49 (Count I); (2) releasing through the PSP reports of violations that were not previously determined to be "serious," *id.* ¶¶ 150-58 (Count II); (3) maintaining in the MCMIS reports of alleged safety violations that were not yet adjudicated in court, *id.* ¶¶ 159-69 (Count III); and (4) improperly delegating their responsibility to ensure accuracy in the MCMIS data to the states participating in the MCSAP through the DataQs system, *id.* ¶¶ 170-79 (Count IV).  The plaintiffs also claim that the defendants willfully and/or negligently violated various provisions of the FCRA by maintaining allegedly incomplete information in the MCMIS and the dissemination of that information through the PSP.  *Id.* ¶¶ 180-93 (Count V).  Notably, by contrast to the original complaint, which generally described each plaintiff's harm as including "los[t] business opportunities" and "loss of income," *see* Compl., ¶ 70, 85, 102, 113.  ECF No. 1, the First Amended Complaint omitted any reference to pecuniary or professional harm, stating merely that each individual plaintiff was "adversely affected or aggrieved" by the defendants' conduct, *see* FAC ¶¶ 70, 99, 115, 125,138.

The defendants renewed their motion to dismiss for lack of subject matter jurisdiction, Defs.' Second Mot. to Dismiss, ECF No. 37, which this Court denied, mindful of the D.C.

Circuit's pointed observation that FMCSA "had 'not compiled a record with an eye toward judicial review—indeed, they have insisted that they have no role to play in the MCMIS process,'" Mem. Op. and Ord. (quoting *Weaver,* 744 F.3d at 147), ECF No. 46, at 3, despite concluding that "[t]he defendants ma[de] a colorable challenge to the plaintiffs' standing," *id.* at 6.  DOT subsequently filed a certified list of the contents of the Administrative Record, ECF No. 49, which the plaintiffs described as "woefully inadequate," prompting their motion for discovery. Pls.' Mem. Supp. Mot. for Discovery at 3, ECF No. 53-1. In addition to that motion, as noted, the parties have filed cross-motions for summary judgment, which are now ripe for review.

## II.    LEGAL STANDARD

Article III of the Constitution restricts the power of federal courts to hear only "Cases" and "Controversies."  U.S. CONST. art. III, § 2, cl. 1.  Indeed, federal courts are "forbidden . . . from acting beyond [their] authority," *NetworkIP, LLC v. FCC*, 548 F.3d 116, 120 (D.C. Cir. 2008), and "have an affirmative obligation 'to consider whether the constitutional and statutory authority exist for [them] to hear each dispute,'" *James Madison Ltd. ex rel. Hecht v. Ludwig*, 82 F.3d 1085, 1092 (D.C. Cir. 1996) (quoting *Herbert v. Nat'l Acad. of Scis.*, 974 F.2d 192, 196 (D.C. Cir. 1992)).  Absent subject-matter jurisdiction over a case, the Court must dismiss it. FED. R. CIV. P. 12(h)(3); *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 506–07 (2006).

"The doctrine of standing gives meaning to these constitutional limits by 'identify[ing] those disputes which are appropriately resolved through the judicial process.'"  *Susan B. Anthony List v. Driehaus*, 134 S. Ct. 2334, 2341 (2014) (alterations in original) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992)); *see also Clapper v. Amnesty Int'l USA*, 133 S. Ct. 1138, 1146 (2013) ("'One element of the case-or-controversy requirement' is that plaintiffs 'must

establish that they have standing to sue.'" (quoting *Raines v. Byrd*, 521 U.S. 811, 818 (1997))). This "doctrine limits the category of litigants empowered to maintain a lawsuit in federal court to seek redress for a legal wrong." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016).

"[T]he irreducible constitutional minimum of standing contains three elements." *Lujan*, 504 U.S. at 560. First, the plaintiff must have suffered an "injury in fact," *i.e.*, "an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent." *Id.* (internal citations and quotation marks omitted). "Second, there must be a causal connection between the injury and the conduct complained of," *i.e.*, the injury alleged must be fairly "traceable to the challenged action of the defendant." *Id.* Third, it must be likely that "the injury will be redressed by a favorable decision." *Id.* at 561 (internal quotation marks omitted).[5]

The Supreme Court in *Spokeo* recently emphasized the need for careful examination of the first step of standing analysis, instructing that, in performing the injury in fact analysis, "particularization" and "concreteness" are distinct requirements that must be met. 136 S. Ct. at 1548. "For an injury to be particularized," the Court explained, "it must affect the plaintiff in a personal and individual way." *Id.* Particularization requires that plaintiff show he "personally has suffered some actual or threatened injury," *id.* (citing *Valley Forge Christian Coll. v. Ams. United for Separation of Church & State, Inc.*, 454 U.S. 464, 472 (1982)), and requires a plaintiff to raise more than a "generalized grievance[]," *id.* at 1555 (citing *Lujan*, 504 U.S. at 573). The Court, however, made clear that while "[p]articularization is necessary to establish injury in fact, . . . it is not sufficient." *Id.* at 1548. "An injury in fact must also be concrete." *Id.* (internal quotation marks omitted).

---

[5] For an association—like OOIDA in the instant case—to have standing, it must show that "one or more of its members" would have standing to sue. *Kingman Park Civic Ass'n v. Bowser*, 815 F.3d 36, 39 (D.C. Cir. 2016) (citing *Hunt v. Wash. Apple Advert. Comm'n*, 432 U.S. 333, 342-43 (1977)).

Concreteness requires that an alleged violation actually result in an injury.  *Spokeo*, 136 S.Ct. at 1548*; see also Hancock v. Urban Outfitters, Inc.,* No. 14-7047, 2016 WL 3996710, at *3 (D.C. Cir. July 26, 2016) (applying *Spokeo*).  "A concrete injury must be *de facto*; that is, it must actually exist."  *Spokeo*, 136 S. Ct. at 1548 (internal quotation marks omitted).  Though intangible harms "can nevertheless be concrete," *id.* at 1549, concrete injury requires showing something more than an individual's interest in not seeing a statute violated.  *See Allen v. Wright*, 468 U.S. 737, 754 (1984) ("[A]n asserted right to have the government act in accordance with law is not sufficient, standing alone, to confer jurisdiction on a federal court."), *abrogated on other grounds by Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 134 S.Ct. 1377 (2014). The concreteness requirement means that, in simple terms, some statutory violations "could 'result in no harm,'" *i.e.*, not create an injury in fact, "even if they involved . . . [technical] violat[ions of] the law."  *Hancock*, 2016 WL 3996710, at *3 (citing *Spokeo*, 136 S.Ct. at 1550).

The question of the plaintiffs' standing is a "threshold jurisdictional question," *Holistic Candlers & Consumers Ass'n v. FDA*, 664 F.3d 940, 943 (D.C. Cir. 2012) (quoting *Byrd v. EPA*, 174 F.3d 239, 243 (D.C. Cir. 1999)), that must be addressed before reaching the merits of the their claims, *see Pub. Citizen v. U.S. Dist. Court for the Dist. Of Columbia*, 486 F.3d 1342, 1346 (D.C. Cir. 2007) ("'Article III jurisdiction is always an antecedent question' to be answered prior to any merits inquiry." (quoting *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 101 (1998))).

## III.   DISCUSSION

DOT raises several arguments for judgment in its favor on the plaintiffs' APA and FCRA claims, including that the plaintiffs lack standing to sue under Article III of the Constitution.  *See generally* Defs.' Mem. Supp. Mot. Summ. J. ("Defs.' Mem."), ECF No. 61; Defs.' Opp'n Pls.'

Cross-Mot. Summ. J. & Reply Supp. Defs.' Mot. Summ J. ("Defs.' Reply"), ECF No. 70.  The

plaintiffs contest all of DOT's arguments and, further, have moved for discovery on their FCRA

claim.[6]  *See generally* Pls.' Mem. Supp. Cross-Mot. Summ. J. & Opp'n Def.'s Mot. Summ. J.

("Pls.' Mem."), ECF No. 64-1; Pls.' Reply Supp. Cross-Mot. Summ. J. ("Pls.' Reply"), ECF No.

74.  The plaintiffs have failed, however, to make any showing of a concrete injury in fact and

this is fatal to all of their claims.

 Each of the plaintiffs' claims are predicated on the same underlying conduct of DOT: the

maintenance of allegedly incomplete data in the MCMIS database that may be disseminated to

potential employers through the PSP, and DOT's alleged abdication of its duty to ensure the

MCMIS has accurate information by permitting states to determine whether violations are

removed from the system.  Yet, the plaintiffs have not demonstrated that either the maintenance

or dissemination of allegedly incomplete data, even if this amounts to a violation of DOT's

statutory responsibilities, has harmed them in any way. The Supreme Court's instruction in

*Spokeo* is clear: a plaintiff cannot "allege a bare procedural violation, divorced from any concrete

harm, and satisfy the injury-in-fact requirement of Article III."  *Spokeo*, 136 S. Ct. at 1549.

 The D.C. Circuit's application of *Spoke*o in *Hancock v. Urban Outfitters, Inc.*, No. 14-

7047, 2016 WL 3996710 (D.C. Cir. July 26, 2016), is dispositive on the plaintiffs' lack of a

concrete injury sufficient for standing in this case.  In *Hancock*, two plaintiffs alleged that

requests by stores for the plaintiffs' zip codes when processing credit card information

constituted a violation of a D.C. consumer protection law and created an injury sufficient to

---

[6] The parties disagree whether the government agencies are subject to the requirements of the FCRA and
whether sovereign immunity bars FCRA claims against an agency. Pls.' Mem. at 34-41; Defs.' Mem. at 36-41.
Even assuming, as the Supreme Court did in *Spokeo*, that the FCRA applies in this case, 136 S. Ct. at 1546 n.4, the
applicability of the FCRA to government agencies need not be addressed, since the plaintiffs' claims fail the
standing inquiry.

support standing. *Id.* at *2. The Court observed that the plaintiffs did not allege a concrete, cognizable injury, "for example, any invasion of privacy, increased risk of fraud or identity theft, or pecuniary or emotional injury," *id.* at *7, but instead alleged that the violation of the law itself gave rise to standing, *see id.* at *2. The Court, citing *Spokeo*, concluded that without a concrete injury, the plaintiffs had merely identified "a statutory violation [that] result[ed] in no harm," *id.* at *7, and that because there was no concrete harm alleged, the plaintiffs lacked standing, requiring dismissal of their claims, *id.* at *6-8.

Similarly, the plaintiffs in this case do not allege or provide evidence of a concrete harm resulting from DOT's actions. No plaintiff has alleged that his employment or employment opportunities were adversely affected in any way by the maintenance of the MCMIS or by the dissemination of reports through the PCP. The plaintiffs have also failed to identify anything in the administrative record or joint appendix that would support the requisite finding of a concrete harm. *See Scenic Am., Inc. v. U.S. Dep't of Transp.*, No. 14-5195, 2016 WL 4608153, at *6 (D.C. Cir. Sept. 6, 2016) (noting that at the summary judgment stage, a party "must" have introduced evidence into the record to support facts necessary to find standing). To the contrary, the record reveals that, of the individual plaintiffs, only Mowrer and Weaver have even had their records requested by a third party during the relevant time period, AR at 332, and neither Mowrer nor Weaver make any claim, in the pleadings or briefs, as to the impact of these requests and subsequent disclosures.[7]

Further, the absence of the allegations of any concrete harm is all the more noticeable in the First Amended Complaint, where instead of providing more detail about actual harm, the

---

[7] While both *Spokeo* and *Hancock* addressed claims under the FCRA, rather than under the APA, the difference in the statutory basis for the claims is immaterial. No matter the legal claim, the underlying factual allegations must adequately show an injury in fact to support standing.

plaintiffs' allegations of injury were diluted to generic language about being "adversely affected or aggrieved."  *See, e.g.*, FAC ¶ 70.  Rather than argue for the existence of a concrete injury, Plaintiffs argue that an "injury in fact may exist solely by virtue of legal rights created by statute," Pls.' Mem. at 24, and that deprivation of a statutory right is necessarily an injury "which creates standing," *id.*  Under this legal theory, plaintiffs assert that they "have standing based on the invasion of [their asserted] statutory rights."  *Id.*  This argument was squarely rejected in *Spokeo*.  *Hancock*, 2016 WL 3996710 at *6.[8]

Plaintiffs also argue that the potential broad uses of their data, in the "Driver Information Resource, Driver Safety Measurement System, Carrier Safety Measurement System" and other government databases create an injury in fact, and that this risk of injury persists if the information is maintained in a database or disclosed in the future.  Pls.' Mem. at 23, 27.  These arguments fail, however, for the same reason as the first: the plaintiffs do not explain how these asserted violations currently cause, or could imminently cause, a concrete harm.  Without any concrete harm demonstrated, or even alleged, the plaintiffs do not satisfy the injury in fact requirement, and lack standing to bring these claims against DOT.[9]

---

[8]   Although the Supreme Court's decision in *Spokeo* and the D.C. Circuit's decision in *Hancock* were issued after completion of briefing in this case, no party provided notice of this controlling authority or made any effort to supplement the briefing to address these cases since their issuance.  This may explain why the plaintiffs' briefing asserts plainly incorrect statements of the applicable law.  Nevertheless, this Court is obliged to reach questions of subject matter jurisdiction *sua sponte*, even if not addressed by the parties, since review of the merits of a dispute may only be undertaken if the Court is satisfied such jurisdiction exists. *See, e.g.*, *Liberty Mut. Ins. Co. v. Wetzel*, 424 U.S. 737, 740 (1976).

[9]   This case is dismissed due to the plaintiffs' failure to satisfy the injury in fact requirement and, thus, discussion of the other requisite elements of standing is unnecessary.  Notably, however, the plaintiffs' showing on causation and redressability are also tenuous at best.  For example, while the plaintiffs seek to have information contained in the MCMIS updated or amended, the FCSMA does not have the power to amend MCMIS data that has been reported by a state, meaning that any order directed to the defendants currently before this Court may not affect the MCMIS in any way.  *See Weaver*, 744 F.3d at 143-44. Additionally, the fact that the states are the final arbiters of the information entered into MCMIS raises significant question whether DOT's actions caused the plaintiffs' asserted injuries at all.  *Id.*

IV.     **CONCLUSION**

Having concluded that the plaintiffs do not have standing to bring their claims, the Court lacks subject-matter jurisdiction to resolve the merits of the parties' pending cross-motions for summary judgment and the plaintiffs' discovery motion, and must instead dismiss the plaintiff's complaint.  *See Swanson Grp. Mfg. LLC v. Jewell*, 790 F.3d 235, 238 (vacating summary judgment where the plaintiff lacked standing and remanding with instructions to dismiss the complaint); *Taylor v. FDIC*, 132 F.3d 753, 769 (D.C. Cir. 1997) (same).  Dismissing the complaint without reaching the parties' pending motions "clears the path for future relitigation of the issues" should the plaintiffs later establish their standing to sue.  *See Maydak v. United States*, 630 F.3d 166, 177 (D.C. Cir. 2010) (internal quotations omitted) (quoting *Ramallo v. Reno*, 114 F.3d 1210, 1214 (D.C. Cir. 1997)).

For the foregoing reasons, the defendants' motion for summary judgment is granted in part with respect to their argument that the plaintiffs lack standing and denied in all other respects.  The plaintiffs' cross-motion for summary judgment and motion for discovery are denied.


Date: September 30, 2016


                                                    _____
                                                    BERYL A. HOWELL
                                                    United States District Judge