UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| KLINT L. MOWRER, *et al.*, | |
| Plaintiffs, | Civil Action No. 12-1158 (BAH) |
| v. | |
| U.S. DEPARTMENT OF TRANSPORTATION, *et al.*, | Chief Judge Beryl A. Howell |
| Defendants. | |

## MEMORANDUM OPINION

Plaintiffs, two professional truck drivers named Klint L. Mowrer and Fred Weaver, Jr., dispute the accuracy of information about their driving records in a database kept by the Federal Motor Carrier Safety Administration ("FMCSA"). The First Amended Consolidated Complaint ("FACC"), ECF No. 95, seeks damages from the defendants—the United States, the Department of Transportation ("DOT") and its Secretary, and the FMCSA and its Administrator—for alleged violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§ 1681 *et seq.*, which regulates "consumer reporting agencies," *id.* § 1681(a). Earlier in this litigation, Mowrer and Weaver, joined by four other plaintiffs, had asserted multiple claims for damages and equitable relief under the FCRA and the Administrative Procedure Act, *see* Consolidated Compl., ECF No. 35, all of which—save Mowrer's and Weaver's FCRA damages claim—were dismissed for lack of Article III standing, *see Owner-Operator Indep. Drivers Ass'n (OOIDA) v. Dep't of Transp.*, 879 F.3d 339, 345, 347 (D.C. Cir. 2018) (affirming in part and reversing in part *OOIDA v. Dep't of Transp.*, 211 F. Supp. 3d 252 (D.D.C. 2016)). Pending now is the defendants' motion to dismiss the amended complaint under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim, because the FMCSA is not a "consumer reporting agency" as that term is defined

1

in the FCRA, or under Rule 12(b)(1) for lack of subject matter jurisdiction, because the plaintiffs' claim is barred by sovereign immunity. Defs.' Mot. at 1, ECF No. 97; FED. R. CIV. P. 12(b). The defendants' motion to dismiss is granted for the reasons set forth below.

I.   **BACKGROUND**

The statutory, regulatory, factual, and procedural background for this case were provided across several of the half-dozen prior decisions in this litigation. *See OOIDA*, 879 F.3d at 340–42; *OOIDA*, 211 F. Supp. 3d at 255–58; *Weaver v. FMCSA*, 744 F.3d 142, 142–44 (D.C. Cir. 2014). Background bearing on the reasons for granting defendants' motion is repeated here.

   A.   **Statutory and Regulatory Background**

   1.   *The FCRA*

Aiming to ensure "fair and accurate credit reporting," 15 U.S.C. § 1681(a)(1), the FCRA regulates the creation and use of "consumer report[s],"[1] *id.* § 1681a(d)(1), by "consumer reporting agenc[ies]," *id.* § 1681a(f), "for certain specified purposes," *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1545 (2016). The FCRA defines a "consumer reporting agency" as:

> any person which, for monetary fees, dues, or on a cooperative nonprofit basis, regularly engages in whole or in part in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports to third parties, and which uses any means or facility of

---

[1] The term "consumer report" is defined as:
   any written, oral, or other communication of any information by a consumer reporting agency bearing on a consumer's credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living which is used or expected to be used or collected in whole or in part for the purpose of serving as a factor in establishing the consumer's eligibility for—
   (A) credit or insurance to be used primarily for personal, family, or household purposes;
   (B) employment purposes; or
   (C) any other purpose authorized under section 1681b of this title.

15 U.S.C. § 1681a(d)(1).

interstate commerce for the purpose of preparing or furnishing consumer reports.

15 U.S.C. § 1681a(f).

### 2. *The FMCSA*

The FMCSA is the agency within the DOT responsible for ensuring "the highest degree of safety in motor carrier transportation." 49 U.S.C. § 113(b). By statute, the FMCSA must operate a database, called the Motor Carrier Management Information System ("MCMIS"), containing safety records, including information about crashes, inspections, and enforcement, of commercial truck drivers and motor carriers. *See* 49 U.S.C. § 31106; *see also* 65 Fed. Reg. 83124, 83125 (Dec. 29, 2000) (describing data in the MCMIS). The MCMIS's statutory purpose is "to support safety regulatory and enforcement activities required under [Title 49]." 49 U.S.C. § 31106(a)(1). For example, and consistent with that purpose, the FMCSA uses information from the MCMIS to determine which motor carriers should be prioritized for inspection. *See Silverado Stages, Inc. v. FMCSA*, 809 F.3d 1268, 1271 (D.C. Cir. 2016).

In the Safe, Accountable, Flexible, Efficient Transportation Equity Act: A Legacy for Users ("SAFETEA-LU"), Congress mandated a new program to provide "electronic access" to the MCMIS's crash and inspection reports for "persons conducting preemployment screening services for the motor carrier industry." SAFETEA-LU, Pub L. 109-59, § 4117(a), 119 Stat. 1144, 1728–29 (2005) (codified at 49 U.S.C. § 31150). DOT's Secretary must "ensure that any information that is released . . . will be in accordance with the [FCRA] and all other applicable Federal law." 49 U.S.C. § 31150(b)(1). The FMCSA implemented SAFETEA-LU with the Pre-Employment Screening Program ("PSP"), which gives the motor carrier industry electronic access, for a fee, to three types of reports in the MCMIS. *See id.* § 31150(a) (naming those three reports as "[c]ommercial motor vehicle accident reports," "[i]nspection reports that contain no

driver-related safety violations," and "[s]erious driver-related safety violation inspection reports"); *see also* 75 Fed. Reg. 10554, 10554–55, 2010 WL 752157 (March 8, 2010) (announcing the PSP).

B. **Procedural Background**

These two consolidated suits challenge the accuracy of information stored in the MCMIS about state-issued citations that the plaintiffs allege were ultimately dismissed or resolved in their favor. FACC ¶¶ 113 (Mowrer), 134 (Weaver).[2] Both plaintiffs claim that a prospective employer accessed, through the PSP, a pre-employment screening report reflecting the allegedly inaccurate state citations. *Id.* ¶¶ 113 (Mowrer), 134 (Weaver).

The initial consolidated complaint by Mowrer, Weaver, and four other plaintiffs survived a motion to dismiss "without prejudice, pending review of an administrative record." Mem. Op. and Ord. at 8 (Mar. 10, 2015), ECF No. 46. In a footnote, the decision rejected the "defendants' contention that the FCRA does not contain a waiver of sovereign immunity" by "adopt[ing]" the holding of *Bormes v. United States*, 759 F.3d 793, 795 (7th Cir. 2014), that the United States waived its sovereign immunity by including "any . . . government or governmental subdivision or agency," 15 U.S.C. § 1681a(b), in the FCRA's definition of "person," *see* Mem. Op. and Ord. at 8 n.3. The FCRA's civil damages provisions subject "any person" who fails to comply with the Act's substantive provisions to compensatory damages and allow statutory damages as an alternative to actual damages for willful violations. *See* 15 U.S.C. §§ 1681n, 1681o.

After the defendants filed the administrative record and the parties briefed cross-motions for summary judgment, all of the claims were dismissed for lack of Article III standing. *OOIDA*, 211 F. Supp. 3d at 261–62. In seeking summary judgment, the defendants again argued that the

---

[2] The two consolidated cases are Civil Action No. 12-1158, originally filed in this Court, and Civil Action No. 14-0548, originally filed with the D.C. Circuit.

4

FCRA did not waive sovereign immunity, but the Court declined to revisit its earlier ruling and, "since the plaintiffs' claims fail[ed] the standing inquiry," also declined to address "the applicability of the FCRA['s]" definition of "consumer reporting agenc[ies]" to "government agencies." *Id.* at 260 n.6.

On appeal, defendants' brief expressly reserved, in the event of remand, the two arguments raised in the instant motion to dismiss. *See* Brief of Appellees, *OOIDA*, 187 F.3d 339 (No. 16-5355), 2017 WL 2806868 at *49. The D.C. Circuit affirmed the dismissal of all claims except for Mowrer and Weaver's FCRA damages claim, remanding for further proceedings. *OOIDA*, 879 F.3d at 347.

Mowrer's and Weaver's First Amended Consolidated Complaint brings a single count against the defendants for monetary damages for negligently violating the FCRA "by failing to follow reasonable procedures to assure maximum possible accuracy" in MCMIS data, FACC ¶ 145 (citing 15 U.S.C. §§ 1681a, 1681e(b)); *see also id.* ¶¶ 146–48 (citing 15 U.S.C. § 1681i(a)(1), (4), (5)), and for willfully violating the FCRA by failing to take corrective action after the plaintiffs disputed the data's accuracy, *id.* ¶¶ 149–51 (citing 15 U.S.C. §§ 1681i(a)(1), (4), (5), 1681c(f)).[3] They seek "statutory and actual damages for violating their rights under the FCRA," as well as "their costs of litigation, including reasonable attorneys' fees." FACC at 20.[4]

---

[3] The plaintiffs were denied leave to file a damages claim under the Privacy Act, *see* 5 U.S.C. § 552a, in part because their dropping of a damages claim under the Privacy Act from their initial consolidated complaint in 2014 amounted to a "voluntary dismissal" of that claim. Mem. Op. and Ord. at 6 (Sept. 10, 2018), ECF No. 92 (quoting *Halldorson v. Sandi Grp.*, 934 F. Supp. 2d 147, 156 (D.D.C. 2013)).

[4] The alleged negligent violations carry actual damages, 15 U.S.C. 1681o(a)(1), while the alleged willful violations carry actual damages or statutory damages "of not less than $100 and not more than $1,000," *id.* § 1681n(a)(1)(A). The plaintiffs do not allege precisely when they disputed the data, when the defendants furnished PSP reports to prospective employers, nor any specific consequences of prospective employers' accessing the reports. *See* FACC ¶¶ 95–114 (Mowrer), 115–135 (Weaver). As a result, at this stage, the estimated damages at stake for each plaintiff are unclear.

5

## II. LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6), the "complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Wood v. Moss*, 572 U.S. 744, 757–58 (2014) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). A facially plausible claim pleads facts that are not "'merely consistent with' a defendant's liability" but that "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)); *see also Rudder v. Williams*, 666 F.3d 790, 794 (D.C. Cir. 2012). In deciding a motion under 12(b)(6), the court must consider the whole complaint, accepting all factual allegations as true, "even if doubtful in fact." *Twombly* at 555; *see also, e.g.*, *Marshall's Locksmith Serv. Inc. v. Google, LLC*, 925 F.3d 1263, 1265 (D.C. Cir. 2019). The same is true for deciding motions under 12(b)(1) for lack of subject-matter jurisdiction. *Am. Nat'l Ins. Co. v. FDIC*, 642 F.3d 1137, 1139 (D.C. Cir. 2011).

## III. DISCUSSION

The plaintiffs allege that the FMCSA violated three provisions of the FCRA that apply only to "consumer reporting agenc[ies]." *See* FACC ¶¶ 144–51 (citing 15 U.S.C. §§ 1681c, 1681e(b), 1681i); *see also id.* ¶¶ 59 ("FMSCA is a consumer reporting agency within the meaning of the FCRA." (citing 15 U.S.C. § 1681a(f))). Defendants' motion to dismiss contends that the amended complaint fails to state a claim on which relief can be granted because the FMCSA is not a "consumer reporting agency." *See* Defs.' Mem. Supp. Mot. Dismiss ("Defs.' Mem.") at 9, ECF No. 97-1. The motion to dismiss is granted on that ground.[5]

---

[5] The defendants' argument that the FCRA damages claim is also barred by sovereign immunity is not reached because dismissal is granted on the alternative ground. *See* Defs.' Mem. at 16 (raising the two arguments for dismissal in the alternative). Although the Court rejected the defendants' assertion that sovereign immunity bars the plaintiffs' FCRA claim in connection with the motion to dismiss the first consolidated complaint, *see* Mem. Op.

The FCRA defines a "consumer reporting agency," in relevant part, as "any person which, for monetary fees . . . regularly engages in whole or in part in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports to third parties." 15 U.S.C. § 1681a(f).[6] At first blush, this definition seems to encompass the FMCSA's actions in distributing, for a fee, pre-employment assessments to third parties through a program, the PSP, specifically designed for that purpose. *See* 49 U.S.C. § 31150.

This first impression unravels, however, on close inspection of the definition, which states that, to be a "consumer reporting agency," an entity must "*assembl[e]* . . . consumer credit information or other information on consumers" for the requisite "purpose." 15 U.S.C. § 1681a(f) (emphasis added). The FMCSA *furnishes* information to third parties through PSP but *assembles* information in the MCMIS. The PSP is simply a "screening tool that allows motor carriers and individual drivers to purchase driving records from the FMCSA MCMIS system." 77 Fed. Reg. 42548, 42549 (July 19, 2012); *see also id.* (describing PSP as a "snapshot in time" of data assembled for and stored in the MCMIS). The plaintiffs' own complaint acknowledges that the data at issue is compiled and maintained in the MCMIS, alleging that the challenged state citations "went into FMCSA's MCMIS database," FACC ¶¶ 100, 119, that the

---

and Ord. at 8 n.3, the defendants have revived this challenge at each stage of this litigation, *see OOIDA*, 211 F. Supp. 3d at 260 n.6; Brief of Appellees, *OOIDA*, 187 F.3d 339 (No. 16-5355), 2017 WL 2806868 at *49. The government's instant motion to dismiss relies heavily on arguments drawn from *Daniel v. National Park Service*, 891 F.3d 762 (9th Cir. 2018), which held that the FCRA does not contain "a clear waiver of sovereign immunity," *id.* at 776; *see also* Defs.' Mem. at 9–20; Defs.' Reply Supp. Mot. Dismiss (Defs.' Reply) at 8–16, ECF No. 100. Those arguments are addressed here where relevant to the adjacent question of whether the FCRA's definition of "consumer reporting agency" covers federal agencies like the FMCSA.

[6] Plaintiffs' emphasis on the FCRA's definition, at 15 U.S.C. § 1681a(b), of "person" (which includes a "government or governmental subdivision or agency") is misplaced because the question here is not whether a government agency can be a "person" but whether the definition at § 1681a(f) of a "consumer reporting agency" covers the FMCSA in handling the data at issue here. *See* Pls.' Opp'n Defs.' Mot. Dismiss (Pls.' Opp'n) at 9, ECF No. 99.

plaintiffs filed with the FMCSA "challenge[s] to MCMIS's continued maintenance of [that state-citation] data," *id.* ¶ 104; *see also id.* ¶ 122, and that "[u]nder PSP, the [DOT] provides prospective employers access to portions of MCMIS data," *id.* ¶ 49; *see also id.* ¶ 145 (alleging that defendants violated the FCRA by failing to follow procedures to ensure the accuracy of data "maintained in their MCMIS database and distributed through the PSP program"). What matters here is the MCMIS's purpose, not that of the PSP.[7]

Congress mandated the creation of the MCMIS not for the purpose of providing information to third parties but for the purpose of "support[ing] safety regulatory and enforcement activities required under [Title 49]." 49 U.S.C. § 31106(a)(1); *see also OOIDA*, 879 F.3d at 340–41 ("To fulfill its mandate of ensuring 'the highest degree of safety in motor carrier transportation,' the FMCSA . . . maintains the [MCMIS] . . . ." (quoting 49 U.S.C. § 113(b)). In short, the FMCSA is not a "consumer reporting agency" because the information at issue was assembled in the MCMIS for the purpose of ensuring transportation safety and not for the purpose of furnishing consumer reports to third parties.

In directing the creation of the PSP, Congress did not modify the safety purpose for which the information in the MCMIS is assembled. To the contrary, the FMCSA's purpose in operating the PSP is tied to motor carrier safety. The Conference Report on SAFETEA-LU reaffirmed that "electronic access to commercial motor vehicle accident reports involving a driver-applicant that are collected and maintained by FMCSA in its [MCMIS]" was needed "[i]n order to improve motor carrier safety." H.R. Rep. 109-203, at 991 (2005) (Conf. Rep.). The FMCSA now operates the PSP in part because providing safety information stored in the

---

[7] The definition of "consumer reporting agency" covers "assembling *or evaluating*" information for the purpose of "furnishing consumer reports to third parties," 15 U.S.C. § 1681a(f) (emphasis added), but the parties offer no arguments about the term "evaluating."

8

MCMIS to employers has "proven safety benefits for motor carriers." *See Does a motor carrier have to use PSP for hiring drivers*, FMCSA, https://www.psp.fmcsa.dot.gov/psp/FAQ.aspx.

Plaintiffs dwell on the fact that the PSP was "created . . . for the express purpose of providing personal driver information" to third parties for a fee. Pls.' Opp'n at 9. Operating a program with such a design is not sufficient, however, to transform a government entity into a "consumer reporting agency." If it were, then every agency keeping qualified records would be subject to the FCRA based on the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, as FOIA, like the PSP, statutorily requires agencies to provide records to third party requestors, often for a fee. *See Milner v. Dep't of Navy*, 562 U.S. 562, 571 (2011) (describing FOIA's "purpose" of "broad disclosure" (internal quotation marks omitted)); *How much does it cost to make a FOIA request*, FOIA.GOV, https://www.foia.gov/faq.html.[8] As the defendants argue, such a reading of the FCRA would impose significant obligations on the federal government, obligations that would overlap with those already imposed by the Privacy Act, which comprehensively regulates federal agencies' collection, maintenance, use, and dissemination of records containing information about an individual and provides relief to individuals seeking to correct such records. *See* 5 U.S.C. § 552a; Defs.' Mem. at 19–20; Defs.' Reply at 5. Plaintiffs offer no evidence that Congress intended such a result.

The plaintiffs also cannot offer a single case deeming a government agency—federal or state—a "consumer reporting agency" subject to the FCRA. Courts have consistently concluded that government entities are not "consumer reporting agenc[ies]" because they do not collect information for the purpose of furnishing it to third parties. *See Ollestad v. Kelley*, 573 F.2d

---

[8] Indeed, the information from the MICMIS found in PSP reports was previously available by FOIA request. *See* 75 Fed. Reg. 10554, 10554, 2010 WL 752157 (Mar. 8, 2010) (presenting the PSP as "an alternative to requiring [prospective employers] to submit a [FOIA] request"); *Flock v. U.S. Dep't of Transp.*, 136 F. Supp. 3d 138, 143 (D. Mass. 2015).

9

1109, 1111 (9th Cir. 1978) (holding that the Federal Bureau of Investigation ("FBI") is not a consumer reporting agency); *Ricci v. Key Bancshares of Maine, Inc.*, 768 F.2d 456, 466 (1st Cir. 1985) (stating the same); *see also Arnold v. Capital One Servs., Inc.*, No. 3:10-CV-244, 2011 WL 864332 at *4 (E.D. Va. Mar. 10, 2011) (same); *Smith v. Busch Entm't Corp.*, No. 3:08CV772-HEH, 2009 WL 1608858 at *3 (E.D. Va. June 3, 2009) (holding that Virginia's state criminal recordkeeping agency is not a consumer reporting agency because it compiles information for "law enforcement purposes"); *Thomas v. FTS USA, LLC*, No. 13-cv-825, 2016 WL 3653883, at *5 (E.D. Va. June 30, 2016) (observing that "governmental agencies are not consumer reporting agencies because governmental agencies do not compile information on persons 'for the purpose of furnishing consumer reports to third parties.'"); *Parks v. Dep't of Ed.*, No. CIV. 99-1052-KI, 2000 WL 62291 at *3 (D. Or. Jan. 26, 2000) ("The [FCRA] controls activities of consumer reporting agencies but does not apply to records held by federal agencies." (citing *Ollestad*, 573 F.3d at 1111)); *accord* Fed. Trade Comm'n, Staff Opinion Letter, State Law Enforcement Agencies, 1998 WL 34323740, at *1 (June 10, 1998) (opining that a state agency that provided criminal history information for employee background checks for a fee was not a consumer reporting agency).[9]

Plaintiffs argue that the FCRA is special because the statute directing the creation of the PSP requires "the Secretary . . . [to] ensure that any information that is released" through the program "will be in accordance with the [FCRA] and all other applicable Federal law." 49 U.S.C. § 31150(b)(1). This provision, on plaintiffs' reading, "expressly subject[s] Defendants to

---

[9] The plaintiffs misread this case law to exempt from the FCRA agencies that "collect records for employment or other internal purposes" but to subject to the FCRA agencies that "compile and distribute . . . to third parties personal information." Pls.' Opp'n at 9. Although *Ollestad* concerned information about an FBI employee, *see Ollestad*, 573 F.3d at 1111, courts have concluded that government entities are not "consumer reporting agenc[ies]" in cases concerning information furnished by government agencies about non-government employees to third parties, *see Ricci*, 768 F.3d at 458; *Smith*, 2009 WL 1608858 at *1; *Thomas*, 2016 WL 3653883, at *3; *Arnold*, 2011 WL 864332 at *1.

the FCRA's requirements." Pls.' Opp'n at 10.  To the contrary, § 31150(b)(1), properly read, merely instructs the FMCSA to ensure that information released through the PSP conforms with the requirements of the FCRA, and with the requirements of all other relevant federal law.

The phrase "in accordance with" generally means "in conformity with" or "in agreement with," not, as the plaintiffs use it, "subject to" or "under."  *See, e.g.*, *In accordance with*, OXFORD ENGLISH DICTIONARY (3d ed. 2011) ("[I]n agreement or harmony with; in conformity to; according to."); *Accordance*, THE NEW OXFORD AMERICAN DICTIONARY (2d ed. 2005) ("([I]n phrase in accordance with) in a manner conforming with."); *Accordance*, WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY UNABRIDGED (2002) ("Agreement . . . now used chiefly in the phrase in accordance with.").  "Under" and "in accordance with" can be synonyms, but context confirms that they are not here.  *See Fla. Dep't of Revenue v. Piccadilly Cafeterias, Inc.*, 554 U.S. 33, 40–41 (2008) (deeming "credible" that the word "under" could mean "in accordance with" but rejecting that interpretation based on context).  Most immediately, construing the words "in accordance with . . . all other applicable Federal law" as reflecting congressional intent to subject the FMCSA to obligations or even liability under innumerable, unnamed federal statutes strains credulity, *cf. FAA v. Cooper*, 566 U.S. 284, 290 (2012) (describing the rule that Congress must "unequivocally express" any intention to subject the United States to liability by waiving sovereign immunity), yet that is how the plaintiffs would read § 31150(b)(1).

Finally, the plaintiffs' position that the FMCSA is subject to the FCRA based on general provisions of that Act and on 49 U.S.C. § 31150(b)(1) cannot be squared with other provisions of the FCRA.  At 15 U.S.C. § 1681u, "Disclosures to FBI for counterintelligence purposes," Congress unambiguously placed on a single federal agency—the FBI—narrowly defined obligations under the FCRA.  The provision allows the FBI access to certain consumer reporting

11

information solely for use in counterintelligence investigations, *id.* § 1681u(a)–(c), restricts the FBI in disclosing or disseminating that information, *id.* § 1681u(d), (g), and then explicitly states that "[a]ny agency or department of the United States obtaining or disclosing any consumer reports, records, or information contained therein in violation of this section is liable to the consumer to whom such consumer reports, records, or information relate" for damages in a specified amount, *id.* § 1681u(j). Section 1681v contains a similarly well-defined procedure for disclosure of information "for counterterrorism purposes" to government agencies "authorized to conduct investigations of . . . international terrorism" but does not state that those agencies are "liable to the consumer." *Id.* § 1681v. Congress' clarity and specificity in these provisions imposing FCRA-related obligations on federal agencies confirms that if Congress had intended to subject the FMCSA to the FCRA, it would have said so explicitly. *See, e.g.*, *Whitman v. Am. Trucking Ass'ns*, 531 U.S. 457, 468 (2001) ("Congress . . . does not . . . hide elephants in mouseholes.").

## IV. CONCLUSION

The defendants' motion to dismiss for failure to state a claim is granted because the FMCSA, in handling the records at issue, is not a "consumer reporting agency" under the FCRA. The plaintiffs' First Amended Consolidated Complaint is dismissed with prejudice.[10] An Order consistent with this Memorandum Opinion will be entered contemporaneously.

Date: September 16, 2019

_____
BERYL A. HOWELL
Chief Judge

---

[10] Dismissal with prejudice is warranted because "the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency." *Rudder*, 666 F.3d at 794 (internal quotation marks omitted). In handling the data at issue, the FMCSA is not, as a matter of law, a "consumer reporting agency."